In re Jimmy Thomas FERNANDEZ–LOPEZ, Marsha Kay Fernandez-Lopez, Debtors.

Jimmy Thomas FERNANDEZ–LOPEZ, Plaintiff/Appellant,

v.

Pat FERNANDEZ–LOPEZ, and Gary A. O'Neil, Defendants/Appellees.

Bankruptcy No. 180–01263.
Adv. No. 182–1086.
BAP No. EC–82–1428–AsEV.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Feb. 18, 1983.

Decided March 27, 1984.

Roger D. Randall, Goldberg, Fisher, Randall & Quirk, Bakersfield, Cal., for plaintiff/appellant.

Gary A. O'Neil, Bakersfield, Cal., for defendants/appellees.

## OPINION

VOLINN, Bankruptcy Judge:

Debtor appeals from the denial by the bankruptcy court of an injunction against a creditor who, after bankruptcy, sued and took a judgment in state court on a discharged pre-bankruptcy debt. The general issue in this appeal is whether appellant's assertion of a bankruptcy discharge as a defense in a state court action seeking recovery on a pre-bankruptcy debt and his subsequent filing of a notice of appeal to the California Court of Appeals bar him from seeking later injunctive relief in the bankruptcy court. The court below dismissed appellant's complaint for such relief at a pretrial conference on grounds of laches and estoppel.

## BACKGROUND

Because of the unusual nature of the ruling and the context in which it was made, closer and more specific examination of the record is called for than would ordinarily be the case.

Appellant's excerpts of the record contain a transcript of the pretrial conference on the complaint for enforcement of injunction brought by the debtor. The 18-page hearing transcript consists entirely of colloquy between court and counsel. References to the state court proceeding in the form of argument were varied and confusing. It is difficult to perceive which aspect of the

record was examined or considered by the Court.

## REVIEW OF STATE COURT ACTIONS

Appellant has attached or incorporated in his excerpts the complaint for enforcement of the injunction and for contempt. This complaint specifies that the co-defendant, Pat Fernandez-Lopez, the debtor's sister (her co-defendant is her attorney, Gary O'Neil) on March 22, 1979, filed a complaint in the West Kern Municipal Court in Bakersfield, California, for the recovery of a $3,000 debt incurred May 26, 1977, obtaining judgment thereon of $3,434.50 on May 2, 1979. Copies of this state court complaint and judgment are attached to the bankruptcy court complaint and have been included in the excerpts of the record.

This debt was listed in the bankruptcy filed by debtor on July 23, 1980. The complaint presently at issue before the bankruptcy court alleged that Mrs. Lopez sued on the same debt after bankruptcy, on a different theory, that is, resulting trust, in the Kern County Superior Court for California. The debtor served an answer alleging that the debt had been previously sued upon and discharged by the bankruptcy court. These pleadings were attached to the complaint now at issue.

The Kern County Superior Court complaint filed September 12, 1981, more than one year after bankruptcy, alleges the debtor borrowed $3,000 from Mrs. Lopez on May 26, 1977. From the record there is no doubt that the same $3,000 transaction was involved in both actions.

The debtor appeared and answered, *in pro per,* in the post-bankruptcy action, contending, *inter alia,*

"Any and all obligations and debts of defendants to plaintiff were discharged in the bankruptcy of Jimmy Fernandez-Lopez, United States Bankruptcy Court, Eastern District of California, No. 180–01263 in which a Discharge of Debtor was ordered by the court on December 9, 1980, as per the attached copy marked Exhibit A. Plaintiff, Pat Fernandez-Lo-

pez, was listed as a creditor and any debt to her has been discharged..."

The debtor also prayed "for an order of the court that plaintiff has no interest in the real property commonly known as 201 East Moneta, Bakersfield, California..." The foregoing property had been set aside as exempt to the debtor in the bankruptcy proceedings, without objection by any party in interest.

The debtor presented his former bankruptcy attorney, Robert S. Williams, *only as a witness* in the post-bankruptcy action. Mr. Williams testified that the debtor had filed bankruptcy and received a discharge. The record shows that on March 23, 1982 judgment was entered declaring a resulting trust and awarding the debtor's home to appellee. At this point appellant retained counsel who filed a motion for a new trial.

The excerpts of the record include the memorandum of points and authorities in support of motion for new trial in the California Superior Court action. Among the points made by debtor's counsel were the following:

1. That the damages awarded by the court were excessive in that the court awarded the debtor's *entire* interest in the real estate in question to Mrs. Lopez for her investment of $3,000 at 18%; that Mrs. Lopez herself contended that she had provided $3,000 for the downpayment and would receive only one-half of the proceeds of the sale of the house.

2. That the debtor had raised the discharge in bankruptcy and that the court had not dealt with this issue at all.

Mr. O'Neil, on behalf of Mrs. Lopez, filed a responsive memorandum of points and authorities.

The memorandum concedes that the state court judgment was excessive:

"Plaintiff, however, is willing to concede that the *proper measure of damages* in this case is the *proportion of the money* contributed by plaintiff to the total purchase price of the house...

Plaintiff, as stated in oral argument, is willing to accept a remittitur from the

original judgment which ordered the title be conveyed to plaintiff *to an amount as set forth above." (Emph. supp.)*

The pleading further states:

"Secondly, even if the court finds that this resulting trust somehow is construed to be a debt, defendant's own hand comes back to impale himself by virtue of his answer to plaintiff's complaint. No doubt, the court issued its ruling based on all available testimony, both written and oral. Part of the record is defendant's answer wherein defendant admits that he borrowed $2,500 from plaintiff. This admission is none other than a clear reaffirmation in *writing* signed by the defendant in his verification of the pre-existing debt. tortuously find this debt, the debt was clearly affirmed according to the formalities of the new Bankruptcy Reform Act of 1978.[1] Plaintiff asserts however that this issue need not be reached because a resulting trust is not dischargeable as a debt and, in fact, is not an action at law based on an underlying obligation at all."

It is evident from the pleading, that the alleged resulting trust complaint was a reprise of the previous action resulting in a money judgment for $3,000 which had been set forth in the debtor's schedules.

The superior court, on June 9, 1982, entered an order denying the motion for new trial stating that:

"The judgment declaring resulting trust dated March 23, 1982 shall stand as previously ordered."

## THE PRE–TRIAL CONFERENCE

### A.

As previously indicated, appellant initiated this action seeking to enforce, in bankruptcy court, the injunction against suit on pre-bankruptcy debt imposed by 11 U.S.C. Sec. 524.

The answer to the complaint in the bankruptcy proceeding denies that the resulting trust complaint was based upon the prior municipal court judgment. The answer further recites the debtor's appearance in state court and thereafter an appeal of that court's judgment. The answer also alleges an offer of settlement for $2,500 which was rejected and laches on the part of the debtor who did not act for approximately one year, stating:

"Further, even after the plaintiff in pro per became represented by counsel, on or about February 19, 1982, *plaintiff's counsel never warned defendants that they may be in violation of a bankruptcy court order.* In fact, the opposite was true; plaintiff's counsel throughout these proceedings has lead defendant's counsel to believe an appeal in state court was to be taken." (Emph. supp.)

This statement is incomprehensible in light of the debtor's constant defense alleging his bankruptcy discharge, counsel's knowledge of the bankruptcy proceedings and, presumably, the legal consequences flowing therefrom.

### B.

The pretrial conference, resulting in the order before us was held on September 23, 1982. The proceedings culminating in the order dismissing plaintiff's complaint for enforcement of injunction, are set forth in 18 pages of transcript. The transcript reveals somewhat of a melee with various counsel attempting to make known to the court who the parties were, their relationship (or lack thereof) to specific parties, what had happened in state court proceedings, their respective theories, and the relief sought. No evidence was presented. The

---

1. The appellee's counsel, during the course of oral argument to the Bankruptcy Appellate Panel conceded that the advice to the court as to reaffirmation was erroneous. 11 U.S.C. Sec. 524(c) requires an order of the bankruptcy court, approving reaffirmation after a hearing so as to prevent recurrence of abuses in obtaining reaffirmations with little if any, understanding by the debtor as to neutralizing his discharges. *See* 3 *Collier on Bankruptcy* (MB) Par. 524.03 at 524–19 (15th ed. 1981). Whether this incorrect statement of the law affected the state court's reconsideration is not known.

creditor's position was stated by her attorney as follows: (TR p. 4)

"Mr. O'Neil: Your Honor, our whole basis of this action is that we file an action, when I say we, I am the successor attorney, the former attorney, Mr. Huskins, is deceased, and took over Mr. Huskins case which was filed in State Court for a resulting trust.

The resulting trust, Your Honor, is an equitable action to prevent the consummation of a fraud, in this case the fraud was the taking of my client's money by Mr. Fernandez, and failing to repay or failing to give her an interest in his house upon his promise.

Our contention, Your Honor, is that a resulting trust is not an action on a debt at all, it's an equitable action.

Their position is that we have violated the permanent order enjoining us from acting upon a debt. We don't believe there was any debt to where we are moving against. *There was a prior judgment, Fernandez filed by Mr. Huskins and that judgment has been dropped, that suit was dropped prior to the filing of this suit for a resulting trust.* (Emph. supp.)

Thereafter, further colloquy occurred wherein Mr. Gildner, debtor's counsel, explained to the court that the debtor had appeared *pro se* in the state court action. The court inquired if the resulting trust action was filed prior to bankruptcy and was advised that it was filed after bankruptcy and that the debtor appeared *pro se* in that proceeding raising bankruptcy as a defense.

During the pre-trial conference, Mr. Williams, Jr., the debtor's former bankruptcy counsel was in the courtroom by sheer chance for the purpose of representing another party in a different matter. He was engaged by the court in colloquy, concerning his representation of the debtor. The court inquired as to why a restraining order was not brought to restrain "the proceedings in this bankruptcy". Mr. Williams replied that he did not represent the debtor in the state court fraud action. After further discussions with Mr. Williams the Court stated:

"... Well, it appears to the Court from what you told me *that it was agreed that after consulting competent bankruptcy counsel that the debtor elected to proceed in the State Court* proceedings, and lost and thereafter appealed and that a motion for new trial and appeal and now for the first time seeks to restrain." (Emph. supp.)

It is clear from the record that the Court concluded that the debtor was represented in the state court proceedings when in fact he was not. The bankrupt had called, Mr. Williams, his former bankruptcy attorney as a witness to verify that there was indeed a bankruptcy. This was his only post-bankruptcy activity. As Mr. Williams stated during the pre-trial hearing, the debtor's "election" was to forego counsel because of lack of funds:

Your Honor, one other comment. I think that Mr. Fernandez-Lopez represented himself because he did not have the money to retain me. I think I did quote him a price for what I would charge to defend and he said 'No, I don't want to do that, I don't have any money to pay you,' and he said, 'I will represent myself,' and I don't think that he elected because he thought he was a better attorney or anything like that."

### LEGAL CONSIDERATIONS

#### A.

1. Validity of the State Court Action. Under Sec. 524(a), the discharge:

voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... of this title, *whether or not discharge of such debt is waived; (2) operates as an injunction against the commencement or continuation* of an action, the employment of process, or any act, to collect, recover or offset any such debt, or from property of

the debtor, *whether or not discharge of such debt is waived...*" (Emph. supp.) The concern of Congress with post-bankruptcy pursuit of the debtor for pre-bankruptcy debts resulted in legislation making the bankruptcy court the exclusive forum for determining whether or not a debt may survive bankruptcy. The basis for this policy and the Congressional statement thereon is set forth in 3 *Collier on Bankruptcy* (MB) Par. 524.01 at 524–4–8 (15th Ed.1981).

■ Most courts agree that despite Sec. 524(a), a secured creditor may enforce, after discharge, a valid pre-petition lien. *See, e.g., In re Dickinson,* 24 B.R. 547, 550 (Bkrtcy.S.D.Cal.1982). (Secured creditors could enforce liens although listed as unsecured creditors in debtor's schedules).[2] But appellee did not seek to enforce a valid subsisting lien in state court post-discharge. She did not object to debtor's schedules, which listed her as an unsecured creditor on a loan. She had sued on this unsecured debt, obtaining a judgment which was ineffective against the debtor's claim of homestead. In her post-discharge suit relating to the scheduled debt, she pursued the same unsecured debt in the guise of an action for a resulting trust. Had he been timely represented the debtor may have been able to assert successfully the bar of *res judicata,* a defense not readily discernible to a *pro per* party. Further assuming *arguendo* that appellee had an equitable lien, California law, C.C.P. § 726, requires one form of action for recovery of any debt or enforcement of a mortgage. Where a creditor elects to recover a personal judgment, he loses his right to security "relegating himself to the position of an ordinary judgment creditor." *James U.P.C.S. Ginning Co.,* 276 Cal.App.2d 19, 80 Cal.Rptr. 457 (1969).

■ The Bankruptcy Court has always had inherent power even prior to Section 524, to review actions of a state court, given appropriate circumstances, and where warranted to enjoin further proceedings in that court. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). This case has been applied frequently. Specific application of *Local Loan* was made in *Browne v. San Luis Obispo National Bank,* 462 F.2d 129, 133 (9th Cir.1972), a case similar in its facts to the one before us. The creditor, listed as unsecured by the bankrupt, some two years after bankruptcy sued in state court for foreclosure of an equitable lien. The court stated:

"Thus, the bank's sole cause of action stems from the promissory note, which was listed on Mrs. Browne's schedule of debts. The Bankruptcy Court has jurisdiction to ensure that the discharge it granted is not circumvented."

### B.

■ A Debtor may collaterally attack the state court's assumption of personal and subject matter jurisdiction despite any waiver or other procedural mistakes he made, acting *pro se. See Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). In *Kalb,* a state foreclosure action taken subsequent to filing of a petition under Sec. 75 of the Act, which automatically stayed such action, was determined to be null and void and subject to collateral attack. *Kalb* has been cited continuously with approval, including decisions regarding violations of the automatic Stay under Sec. 362 and the injunction under Sec. 524(a).

In *Kalb,* the court reasoned:

"It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.... The States cannot, in the exercise of control over local

---

**2.** Note that disagreement exists. *See In re Ray,* 26 B.R. 534, 536, 547–49 (Bkrtcy.D.Kan. 1983) (bank's lien unenforceable when it did

not seek relief from automatic stay, abandonment, reaffirmation, or act to obtain possession of its collateral prior to debtor's discharge).

law and practice, vest state courts with power to violate the supreme law of the land. The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit the jurisdiction which courts, state or federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law... The wisdom and desirability of an automatic statutory ouster of jurisdiction of all except bankruptcy courts over farmer-debtors and their property were considerations for Congress alone."

The court's rationale in *Kalb* should apply with equal force to violations of Sec. 524(a).

### DISPOSITION AT PRETRIAL

The court below dismissed appellant's complaint at pretrial conference on grounds of laches and estoppel. The court relied, apparently, on unsworn remarks by appellant's former bankruptcy counsel, who, by happenstance, was in the courtroom on another matter and did not represent the debtor when his remarks, based on offhand recollection, were made in response to inquiry by the court.

The court's action appears equivalent to disposition at pretrial conference by summary judgment (or on a motion to dismiss). Some courts have approved summary judgment when no triable issue remains after the pretrial conference. *E.g., Wirtz v. Young Electric Sign Co.,* 315 F.2d 326, 327 (10th Cir.1963); *Lynch v. Call,* 261 F.2d 130, 132 (10th Cir.1958); *Pifcho v. Brewer,* 77 F.R.D. 356, 357 (M.D.Pa.1977). But the basis of the judgment must be reflected in the record for effective appellate review, *Young Electric Sign Co.,* 315 F.2d at 327, and pretrial rules contemplate generally that further procedural steps will be taken prior to final disposition of the case. *Id.* at 327 n. 1.

In *Young Electric Sign Co.,* the trial court was reversed for granting summary judgment for defendant at pretrial conference in a suit brought by the Secretary of Labor; the court failed to make a finding on a material issue. While acknowledging that summary procedures may be utilized *when the court has discretion to grant or withhold injunctions upon consideration of undisputed facts, id.* at 327, the court stated that compliance with Rule 56 (Summary Judgment) is desirable. *Id.* at n. 1. In a libel action, resolved by summary judgment as a result of pretrial conference, summary disposition was approved on appeal when the court directed that facts developed at conference be made of record by affidavit. *Klein v. Belle Alkali Co.,* 229 F.2d 658, 662 (4th Cir.1956).

Decisions which have acknowledged the power of federal courts to grant summary judgment *sua sponte* require, at least, notice and an adequate opportunity to respond. *See, Capital Films Corp. v. Charles Fries Productions, Inc.,* 628 F.2d 387, 390 (5th Cir.1980). The court in *Capital Films* stated that two lines of authority exist: (1) the court may act on its own with advance notice and an adequate opportunity to respond for the party against whom judgment will be entered, and (2) strict construction approach, requiring that a *party* move for summary judgment and comply with Rule 56. *Id.* at 390. The Fifth Circuit, *id.,* at 391, and the Seventh Circuit both require strict compliance with Rule 56. *Choudhry v. Jenkins,* 559 F.2d 1085, 1088–89 (7th Cir.1977). In *Choudhry,* extensively cited authority concluding the court:

"Rule 56 plainly does not authorize a court to enter an arbitrary summary judgment *sua sponte* against a party...

Reliance of the court upon oral testimony by a "witness" at pretrial conference was improper. Such procedure was disapproved in *Lynn v. Smith,* 281 F.2d 501, 506–07 (3d Cir.1960). In *Lynn,* the district court took unsworn testimony from the local district attorney on an essential issue in plaintiff's malicious prosecution suit. At the conclusion of the pretrial conference and based on the testimony, the court *sua sponte* entered an order of dismissal and directed judgment for the defendant. In reversing, the Third Circuit stated:

"In our view the receipt of 'oral statements' by 'witnesses' in a pretrial confer-

ence opens a Pandora's box not in contemplation by those who so wisely conceived pretrial procedures as a medium of expediting the trial of cases and not as a substitute for the regular trial process."

*Id.* at 506–07.

## CONCLUSION

■ Congress, in 1970, concluded that it was necessary to change a system where the bankrupt's discharge was subject to post-bankruptcy litigation by one and all of his creditors in courts other than the bankruptcy court. This Congressional policy was based on abuses which cumulatively had seriously attenuated the presumed purpose of the discharge, that is, a fresh start by an economically disabled person.[3] Appellee's conduct in relitigating a discharged claim after bankruptcy is violative of this policy and 11 U.S.C. § 524 which was enacted pursuant thereto.

This case graphically illustrates how an impoverished and legally illiterate debtor can be ground down by post-bankruptcy litigation relating to pre-bankruptcy debt. The additional dimension of a dispositive ruling at a pretrial hearing compounds the improvident basis for dismissal.

Reversed and remanded for further proceedings consistent with this opinion.

---

**3.** See 3 *Collier on Bankruptcy,* Sec. 524.01, at p. 524–4 (15th Ed.1981) stating:

"Section 524 is derived from Section 14f of the Act, which was added to Section 14 by the 1970 amendments to the Act. Prior to 1970, the effect of a discharge was to create an affirmative defense that the debtor could plead in any action brought on the discharged debt. A primary reason for the amendments was to effectuate the discharge and render needless its assertion as an affirmative defense in a subsequent state court action. In the usual case of discharge abuse or creditor harrassment, suit would be brought in a local court after the granting of the discharge, and if the debtor failed to plead the discharge affirmatively, the defense was deemed waived and an enforceable judgment could then be taken against him. Too often, the defense was in fact waived either through inadvertence, failure to be served or lack of means to obtain counsel."