**In re Thomas Neil WATSON aka Watson Physical Therapy; Watson Physical Therapy For Pain, Debtor.**

**Thomas Neil WATSON aka Watson Physical Therapy; Watson Physical Therapy For Pain, Appellant,**

**v.**

**Kenneth E. SHANDELL, M.D.; Southern California Multi–Specialty Medical Group, Inc.; Ralph O. Boldt, Trustee, Appellees.**

**BAP No. SC–94–2454–OCAs.**
**Bankruptcy No. 92–09632–H7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 21, 1995.

Decided Jan. 31, 1996.

742

Wells B. Lyman, La Mesa, CA, for Appellant.

Frederick C. Phillips, San Diego, CA, for Kenneth E. Shandell, M.D.

Before: OLLASON, CARLSON[1] and ASHLAND, Bankruptcy Judges.

1. Honorable Thomas E. Carlson, Chief Bankruptcy Judge for the Northern District of California, sitting by designation.

2. Unless otherwise indicated, all references to "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and all references to "rule" are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

## OPINION.

OLLASON, Bankruptcy Judge:

In this case debtor Thomas Neil Watson ("Watson") has appealed an order denying his motion to reopen his chapter 7 case.[2] Watson sought to enjoin a creditor, who had obtained stay relief to enforce a security interest in accounts receivable, from pursuing a personal monetary judgment against him due to Watson's alleged breach of a settlement agreement to terminate the enforcement litigation. **We Affirm.**[3]

### STATEMENT OF FACTS

Watson filed a voluntary chapter 7 bankruptcy on August 13, 1992; a discharge was entered on November 8, 1993. Watson had a physical therapy business, which had outstanding accounts receivable assets (the "accounts"). Watson purchased the business in 1991 from Kenneth Shandell, M.D. and the Southern California Multi–Specialty Medical Group, Inc. (together "Shandell"). In connection with the sale, Watson executed two promissory notes in the total amount of $300,000 in favor of Shandell; the notes were secured, in part, by a duly perfected security interest in the accounts.

Watson defaulted on the notes in May of 1992. Shandell filed suit in San Diego County Superior Court—Case No. 653060—in June, 1992, alleging breach of contract, and seeking specific performance, and foreclosure and injunctive relief, and specifically to enforce the right to collect the accounts. Watson filed a counterclaim for negligent and intentional misrepresentation, fraud, breach of contract and rescission. Watson's declaration, dated June 25, 1992, stated:

4. At no time in the past through the time of the signing of this declaration have I ever altered information or other records

3. Although Watson's notice of appeal only indicates that he is appealing the order denying the motion for reconsideration, he has presented argument as to the merits of the underlying motion to reopen. Since the motion for reconsideration was filed within 10 days of the entry of the order denying the motion to reopen, it tolled the time for appeal; therefore, both orders are properly before this Panel. *See* Fed.R.Bankr.P. 8002(b); *Floyd v. Laws*, 929 F.2d 1390, 1400 (9th Cir. 1991).

of the accounts receivable to attempt to prevent access to this information by plaintiffs. I have maintained the accounts receivable in the normal and customary business practice and intend to do so in the future. I do not intend to sell, transfer or otherwise encumber the accounts receivable during the pendency of this litigation.

On July 17, 1992, the superior court granted Shandell a preliminary injunction requiring Watson to provide information concerning the accounts and to turn over proceeds of the accounts to Eleanor Blais ("Blais"), attorney for Shandell, as trustee of the funds. Then Watson filed for bankruptcy.

On August 31, 1992, Shandell filed an *ex parte,* emergency motion for relief from the automatic stay to comply with the state court injunction for collection and receivership of the "outstanding" prepetition accounts. On September 3, 1992, the bankruptcy court issued an order for temporary stay relief. The order appointed Shandell to collect the "pre-bankruptcy petition accounts receivable" of Watson. The order also lifted the stay as to the injunction to allow Blais to act as receiver of the accounts. On November 3, 1992, the bankruptcy court entered its final order on the motion for stay relief, which was unopposed by Watson. The order modified the automatic stay as to the state court proceedings in Case No. 653060. It further ordered that Shandell "collect the pre-bankruptcy petition accounts receivable of the debtor."

Shandell used discovery in the state court action as one vehicle to collect the accounts. Various disputes arose, and Shandell attempted to hold Watson in contempt, according to a declaration filed by Blais:

The public record reflects discovery disputes, attempts to have Watson held in contempt for violation of the Preliminary Injunction and Superior Court Judge Anthony Joseph's order, resulting from the contempt motions, requiring Watson to turn over bank account information, including information on the bank accounts of his wife. It was in the context of the potential for additional contempt hearings, and the cost of trial (including trial of his cross-complaint) that Watson agreed to settlement.

Watson alleged that he could not afford the continuing litigation. Therefore, he agreed to enter into a settlement with Shandell. In May of 1993, Watson and Shandell, each represented by counsel, entered into an agreement, effective April 29, 1993, denoted "Corrected Settlement Agreement" (the "agreement"), which purported to settle their respective rights under dispute in Case No. 653060. As consideration to Shandell, Watson relinquished any claim or interest in any prepetition account, "whether collected or uncollected." Watson also agreed to cooperate in turning over "any account receivable money for pre-petition services he might receive or otherwise have control over." As consideration to Watson, Shandell agreed to dismiss with prejudice the state court action and to withdraw the claims in Watson's bankruptcy case. Paragraph 6 of the agreement clarified the rights that the parties were relinquishing:

6. Shandell is not giving up the secured interest in property securing the NOTES that was the subject of the litigation in Superior Court Case Number 653060. *He is only agreeing not to pursue collection on the note through litigation.* In exchange, WATSON is agreeing to give up the property securing the NOTES that were the subject of Superior Court Case Number 653060 [accounts receivable]....

(Emphasis added).

The agreement also contemplated disputes arising between the parties that could be resolved in actions for declaratory relief, contract or tort, and provided for attorney's fees for the prevailing party in such actions.

On July 27, 1993, Shandell filed a second lawsuit against Watson in San Diego Superior Court—Case No. 667063—alleging that Watson had breached the agreement by failing to cooperate in turning over the accounts. Basically, the problem arose from an ambiguity in the agreement's phrase "whether collected or uncollected." Watson alleged that he had used accounts which he received in his office prior to the July 17, 1992 state court injunction to operate the business, and that those accounts were unavailable to be

turned over to Shandell. The accounts collected from July 17—August 13, 1992, totaled approximately $1,200. Shandell contended that all monies from accounts for services rendered prepetition, from the default date of May 18—August 13, 1992—approximately $18,000—were to be turned over, not just those received after the date of the injunction.

Shandell filed a motion for summary judgment. In his response, Watson raised the defense of the discharge in bankruptcy. The superior court ruled that the action should be set for trial on the basis of an ambiguity in the agreement, i.e., whether "collected or uncollected" referred to those monies held in the trust account or to monies collected by Watson.

In the meantime, on June 15, 1994, Watson filed an *ex parte* motion to reopen his bankruptcy case and an *ex parte* motion for a restraining order to enjoin Shandell's prosecution of the pending superior court case.[4] The bankruptcy court denied the motion for lack of evidence accompanying the motion.

On June 28, 1994, Watson filed a second *ex parte* motion to reopen and a second emergency motion to restrain the state court case from pursuing a "personal money judgment" against him, attaching his declaration. Shandell opposed the motion, attaching the declaration of Blais. The bankruptcy court denied these second motions on June 30, 1994, and stated in retrospect, (at the October 4, 1994 hearing on Watson's motion for reconsideration), that it had denied the motion because the dispute concerned "a post-petition settlement agreement," and the bankruptcy court "allowed the matter to go to ... trial." Watson did not appeal the denial of the second motion, and that order became final.

On July 13, 1994, Watson filed his third, noticed motion to reopen the case. That motion was denied by the court, after a hearing, by order entered on July 19, 1994. Watson filed a timely motion for reconsideration.

The jury trial in Case No. 667063 went forward on July 19, 1994. Shandell filed a motion *in limine* to preclude the discharge defense. The superior court made a preliminary finding that the settlement was "a post-bankruptcy agreement and there [was] no discharge defense."

On August 2, 1994, the superior court entered a judgment on a special verdict in favor of Shandell in the amount of $19,969.72, which represented the amount of accounts that Watson failed to turn over between the date of default until the bankruptcy filing date. A further award for attorney's fees, in the amount of $20,000 was entered in favor of Shandell on September 12, 1994. The jury's judgment on special verdict found that Watson owed Shandell for the accounts which "should have been placed in the Blais Trust Account" as follows:

> Question No. 2: Does the Corrected Settlement Agreement entitle plaintiff Kenneth E. Shandell, M.D. to receive from defendant Thomas Watson the amount of all monies that were not but should have been placed in the Blais Trust Account and monies which the defendant had not yet collected for services rendered prior to August 13, 1992? Answer: *Yes*

Thereafter, the bankruptcy court held a hearing on Watson's motion for reconsideration of the July 19, 1994 order, on September 9, 1994, continued to October 4, 1994. The bankruptcy court issued its order denying the motion for reconsideration and making findings of fact and conclusions of law on October 26, 1994. The court determined that the agreement was a postpetition settlement agreement entered into in connection with the collateral which was the subject matter of the prior relief from stay; thus, the automatic stay and discharge injunction did not apply. The court found that Watson received consideration for the settlement, i.e.,

> in particular Watson's avoidance of significant post-petition costs regarding trial in San Diego Superior Court Case No. 653060, as well as Watson's avoidance of a contempt citation, specifically potential fines for violation of an injunction in San Diego Superior Court Case No. 667063.

The court further concluded that a contempt citation of this nature was not a viola-

---

4. A motion to reopen may be made *ex parte*. *In re Daniels,* 34 B.R. 782, 784 (9th Cir. BAP 1983).

tion of the automatic stay, citing *Stovall v. Stovall*, 126 B.R. 814, 815–16 (N.D.Ga.1990).[5]

The court further found that the agreement did not constitute a reaffirmation agreement subject to the provisions of § 524(c). Watson timely appealed.

## ISSUES

I. Whether Watson was precluded from raising the reaffirmation and discharge issues.

II. Whether the postpetition agreement was a reaffirmation of a dischargeable debt subject to the provisions of § 524(c).

III. Whether the discharge injunction of § 524 applied to void the postdischarge state court judgment based on the agreement.

IV. Whether the bankruptcy court abused its discretion in denying the motion to reopen and the motion for reconsideration.

## STANDARD OF REVIEW

We review the question of the availability of collateral estoppel *de novo*. *In re Kelly*, 182 B.R. 255, 258 (9th Cir. BAP 1995). The preclusive effect of a judgment in an earlier case presents a mixed question of fact and law in which the legal issues predominate. *In re Russell*, 166 B.R. 901, 904 (9th Cir. BAP 1994). The applicability of the discharge injunction is a question of law, reviewed *de novo*. *See In re Beeney*, 142 B.R. 360, 362 (9th Cir. BAP 1992).

A bankruptcy court's decision on reopening a bankruptcy case to grant relief to a debtor is reviewed for abuse of discretion. *In re Cisneros*, 994 F.2d 1462, 1464–65 (9th Cir.1993). *In re Watson*, 78 B.R. 232, 233 (9th Cir. BAP 1987). The bankruptcy court's denial of a motion for reconsideration is reviewed for abuse of discretion. *In re Donovan*, 871 F.2d 807, 808 (9th Cir.1989). "Abuse of discretion is found only when there is a definite conviction that the court made a clear error of judgment in its conclusion upon weighing relevant factors." *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 229 (9th Cir.1994) (quoting *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir.1980)).

## DISCUSSION

The facts in this case may be summarized as follows. Watson was liable to Shandell prepetition under a promissory note secured by Watson's accounts receivable. Watson filed a chapter 7 petition. Shandell obtained relief from the stay to seek recovery of its collateral in a state court action, which put Watson at risk of being held in contempt and ordered to pay attorney's fees. The parties then reached a settlement. Shandell released Watson from all *in personam* liability under the promissory note. Watson conceded Shandell's *in rem* rights to recover the collateral securing the note, agreeing to turn over all "collected and uncollected" accounts receivable. Watson received his chapter 7 discharge. Shandell filed a new action in state court, alleging that Watson had breached the settlement agreement by failing to turn over all of his accounts receivable. The state court entered judgment for Shandell, awarding $20,000 damages and $20,000 in attorney's fees. In substance, the state court judgment created an *in personam* liability based on Watson's breach of the provisions of the postpetition settlement agreement recog-

---

**5.** The bankruptcy court considered the legality of whether the automatic stay prohibited the state court's contempt orders against Watson. *Stovall* reflects the majority rule that a contempt judgment is not stayed if it is intended to uphold the dignity of the court—to coerce a defendant to obey a court order, versus a contempt judgment that is a circumvented method of collecting a dischargeable judgment from the debtor. 126 B.R. at 815–16.

Watson has not disputed the legal conclusion that the contempt proceedings did not violate the automatic stay. There are no contempt orders in the record to enable the panel to review the nature of the contempt proceedings. The refer-

ence to the contempt proceedings in the Blais declaration indicates that Watson was held in contempt for failing to provide information concerning the accounts. While such a penalty would be toward collection, it was toward collection of secured collateral which was no longer subject to the automatic stay.

Shandell suggested to the court that Watson also faced contempt for possible perjury, but no such contempt order was entered, according to the record. A contempt order for perjury would uphold the dignity of the court. *In re Dunham*, 175 B.R. 615, 617 (Bankr.E.D.Va.1994). We are satisfied that Watson has waived the issue, and we need not reach it herein.

nizing Shandell's *in rem* rights in the accounts receivable.

Watson contends that the agreement was an improper reaffirmation agreement as to Watson's liability for the expended accounts, and that the state court's judgment was a money judgment on the discharged personal liability under the notes prohibited by § 524. Shandell contends that the agreement was a valid postpetition agreement for new consideration and the judgment on the agreement was not subject to the § 524 injunction. Shandell further contends that Watson was collaterally estopped from raising these issues.

### Preclusive Effect of the State Court Action.

■ The Ninth Circuit adheres to the federal Full Faith and Credit Statute:

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.'

*In re Nourbakhsh,* 67 F.3d 798, 800 (9th Cir.1995) (quoting *Marrese v. Am. Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985) and citing 28 U.S.C. § 1738). Therefore, federal courts "must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

■ Collateral estoppel applies to nondischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 284–85 and n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). Under California law, collateral estoppel precludes the relitigation of an issue when: (1) the issue is identical to that which was decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision was final and on the merits; and (5) the party against whom preclusion is sought is the same as, or

in privity with, the party to the former proceeding. *See Kelly,* 182 B.R. at 258.

■ Furthermore, state courts and bankruptcy courts have concurrent jurisdiction over all proceedings "arising under title 11 or in or related to cases under title 11." 28 U.S.C. § 1334(b). It is settled law that bankruptcy courts do not have exclusive jurisdiction in determining the applicability of the automatic stay. *See In re Baldwin-United Corp. Litigation,* 765 F.2d 343, 347 (2nd Cir.1985). A discharge is a "special type of permanent injunction" which replaces the automatic stay after discharge is entered. *In re Am. Hardwoods, Inc.,* 885 F.2d 621, 626 (9th Cir.1989). Once the bankruptcy court lifted the stay allowing the state court litigation to continue, the state court had jurisdiction to rule on the applicability of the discharge injunction to its case.

■ The Ninth Circuit courts have held that the bankruptcy court always has inherent power to collaterally attack a state court judgment if the judgment violates a Bankruptcy Code provision. *See In re Fernandez-Lopez,* 37 B.R. 664, 669–70 (9th Cir. BAP 1984). In *Fernandez-Lopez,* the record showed that the state court, in a post-discharge suit to recover an unsecured debt, had overlooked the effect of a bankruptcy discharge due to the lack of sophistication of the *pro se* debtor who had raised the defense. The Bankruptcy Appellate Panel held that a bankruptcy court has inherent power to review actions of a state court, where warranted, to enjoin further proceedings in that court. *Id.* at 669–70 (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 238, 54 S.Ct. 695, 696, 78 L.Ed. 1230 (1934)). A situation warranting assertion of bankruptcy court jurisdiction would be one where the state court judgment was entered in violation of the discharge injunction. *See In re Siragusa,* 27 F.3d 406, 408 (9th Cir.1994) (alimony modification in state court was not a violation of § 524, therefore the divorce court had jurisdiction to determine that the payments were not dischargeable under § 523(a)(5)). In this case, however, we conclude that there was no violation of the discharge injunction; therefore, it was not necessary for the bankruptcy

court to assert its jurisdiction to decide this issue. *Id.; see also In re Levy*, 87 B.R. 107, 108 (Bankr.N.D.Cal.1988) (section 524 creates an exception to the state court's jurisdiction, even if the debtor placed the dischargeability issue before it, where the debtor failed to attend the trial and an erroneous ruling resulted which would deprive the debtor of the benefit of his discharge).

The superior court ruled on Shandell's summary judgment motion and pretrial motion *in limine* and concluded that the agreement was a postpetition agreement not subject to Watson's defense of discharge in bankruptcy, and allowed the trial to proceed. Watson subsequently raised two issues before the bankruptcy court: (1) whether the agreement was a reaffirmation of a discharged debt; and (2) whether the discharge injunction applied to the bar the state court proceedings.

### 1. Bankruptcy Court Properly Determined that the Agreement Was Not a Reaffirmation of a Discharged Debt.

 There is nothing in the record showing that the superior court considered whether the agreement was an improper reaffirmation agreement under the provisions of § 524(c); the court simply formed its legal conclusion on the finding that the agreement was a post-bankruptcy agreement. Therefore, the basis for the superior court's determination concerning the nature of the agreement was an issue that was not identical to that subsequently raised in bankruptcy court and was not fully litigated in state court. At least, the record does not show otherwise, and the party asserting collateral estoppel has the burden of establishing all the requisites for its application. *In re Berr*, 172 B.R.

299, 306 (9th Cir. BAP 1994). In the absence of a factual record showing that the superior court considered the pertinent code section, i.e., if the provisions of § 524(c) applied to the agreement, then that question of federal law was unresolved by the state court.

 Watson contends that the agreement to settle the postbankruptcy litigation was an improper reaffirmation of a prepetition debt that was discharged in violation of the requirements of § 524(c) and (d).[6] Watson contends that he used accounts received prior to July 17, 1992 to pay for ordinary business operating expenses that benefitted the creditor, and that the judgment for those expended accounts is a judgment of personal liability against him.

 The reaffirmation rules protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. *In re Martin*, 761 F.2d 1163, 1168 (6th Cir.1985). The general rule concerning postpetition contracts versus reaffirmation of discharged debts is that "the pivotal factor which serves to establish a valid post discharge contract is the existence of some separate consideration for the subsequent agreement." *In re Getzoff*, 180 B.R. 572, 575 (9th Cir. BAP 1995) (quoting *In re Heirholzer*, 170 B.R. 938, 940 (Bankr. N.D.Ohio 1994)). Essentially, if a debtor assumes the same obligations under a new agreement as existed under a former, such a discharged debt obligation would preclude a postpetition agreement from being considered a new and separate agreement. *See Getzoff*, 180 B.R. at 574.

---

**6.** Subsection (c) of § 524, (as it existed in 1992), provides an exception to the discharge provisions for an agreement which reaffirms a dischargeable debt, only if:

(1) such agreement was made before the granting of the discharge ...

(2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later ...

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that repre-

sented the debtor during the course of negotiating an agreement under this subsection, which states that such agreement—

(A) represents a fully informed and voluntary agreement by the debtor; and

(B) does not impose an undue hardship on the debtor or a dependent of the debtor.

11 U.S.C. § 524(c) (1988).

Subsection (d) of § 524, (as clarified and amended by the Bankruptcy Reform Act of 1994), provides that the bankruptcy court shall hold a hearing to explain the legal effect and consequences of a reaffirmation agreement if the debtor were not represented by an attorney during the course of negotiations of the agreement.

■ It is clear that the facts in this case do not support the argument that the agreement was a reaffirmation agreement. Shandell had obtained stay relief to continue the state court action to collect the accounts. In furtherance of the collection efforts and as part of the litigation, Shandell and Watson entered into the agreement postpetition. In return for relinquishing all rights and claims to the prepetition accounts, Watson obtained new consideration consisting of savings of litigation costs and the avoidance of potential contempt fines for disobeying the state court injunction. A decision to forbear a valid legal claim provides sufficient consideration to support an agreement between two parties. *Heirholzer,* 170 B.R. at 941.

This case can also be distinguished from the case where part of the consideration for the new contract is based on a debt that is dischargeable. For example, in *In re Gardner,* 57 B.R. 609 (Bankr.D.Me.1986), a negligence action was brought against the chapter 7 debtor prepetition. The bankruptcy court granted relief from the stay to the plaintiff for the limited purpose of obtaining a final judgment which would be payable by debtor's malpractice insurance carrier. Nevertheless, the stress of litigation was too much for the debtor who stated he "just wanted to get out of there." *Id.* at 610. So, the debtor agreed to pay $4,500 to settle. He paid $1,500 into escrow and a promissory note for $3,000 was drawn up but never signed because the debtor had second thoughts, rescinded the agreement and demanded return of the $1,500. The debtor argued to the bankruptcy court that the settlement agreement was an improper reaffirmation agreement, while the plaintiff argued that the agreement was a postfiling agreement for new consideration. The bankruptcy court agreed with the debtor because "[e]ven though the debtor may have received some post filing consideration, at least part of the consideration for the agreement is based upon the dischargeable debt." *Id.* at 611. It found that the debtor had been "coerce[d]" into an undesirable reaffirmation agreement. *Id.*

While Watson similarly contends that he was driven to entering into the settlement because of the discovery litigation, the settlement was much different from that in *Gardner.* Watson's agreement concerned his obligation to provide collateral that had been released from the automatic stay, not a reaffirmation of the debt on the original note. The subsequent judgment of the state court for the value of that collateral is distinct from a judgment on the original debt, or personal liability of Watson. The terms of the agreement also show that Shandell was foregoing its litigation "on the note" but preserving its *in rem* rights.

The agreement was a valid postpetition agreement for consideration separate from the original debt obligation evidenced by the promissory notes, which was discharged in bankruptcy. The agreement was a resolution of the collection of the collateral—the accounts—relieved from the automatic stay by court order. Watson entered into the postpetition agreement to relinquish all rights and claims to "any" prepetition account receivable "whether collected or uncollected," and became obliged to abide by any judgment to resolve conflicts raised by the agreement, per its provisions. The judgment of the state court was based on the jury's interpretation of the ambiguous provisions of the agreement.

### 2. State Court Judgment Was Not Prohibited By § 524; Watson Was Collaterally Estopped From Raising the Discharge Issue.

■ Since the agreement was a valid contract for postpetition debt for the value of collateral that Watson agreed to relinquish, any judgment ensuing from a breach of that agreement would be outside the scope of the Bankruptcy Code.

Section 727 provides that a debtor will be discharged from all debts that arose before the date of the order for relief except nondischargeable debts. § 727(b). Section 524 enjoins creditors from attempting to collect from the debtor or the debtor's assets debts that have been discharged in bankruptcy. *Beeney,* 142 B.R. at 362. "Courts should readily reopen a closed bankruptcy case to ensure that the essential purposes of the discharge are not undermined." 3 COLLIER

on BANKRUPTCY, § 524–02 at 524–22 (15th ed. 1995).

Section 524(a) states, in pertinent part, that a discharge:

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... whether or not discharge of such debt is waived;

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived....

11 U.S.C. § 524 (1988).

 This case concerns the interplay of §§ 362, 727 and 524. The automatic stay, effective at time of the bankruptcy filing, is a temporary injunction against most actions by creditors. *See In re Bialac*, 712 F.2d 426, 431 (9th Cir.1983); *In re Aldrich*, 34 B.R. 776, 779 (9th Cir. BAP 1983). The automatic stay can be dissolved by order of the court, as in this case, or it is dissolved upon the earliest of the closing of the case, the dismissal of the case or at the time a discharge is granted or denied. § 362(c); *Watson*, 78 B.R. at 235. If a discharge is granted, the automatic stay is replaced by the permanent injunction of § 524. Section 524 enjoins creditors from attempting to collect from the debtor or the debtor's assets debts that have been discharged in bankruptcy. *Beeney*, 142 B.R. at 362.[7]

 The "injunctive provisions form a comprehensive scheme to protect the debtor and estate assets from precipitous creditor actions which might frustrate the purposes of the bankruptcy proceedings." *Watson*, 78 B.R. at 235. Forum shopping by the debtor after the discharge issue has been fully litigated and lost in the state courts is not the type of offensive conduct which § 524 was designed to protect. *Getzoff*, 180 B.R. at 575 (citing *In re Petersen*, 110 B.R. 946, 950 (Bankr.D.Colo.1990) (section 524(c) is intended to be used as a shield to protect the debtor rather than a sword against the creditor)).

 The automatic stay was lifted as to litigation over, and collection of, the accounts. If the automatic stay no longer applied to the accounts following the order for stay relief, then neither did the § 524 injunction apply to the state court litigation for collection of those accounts following Watson's discharge.[8]

 The record shows that the superior court adjudicated the issue of the applicability of § 524(a)—the discharge injunction—when it set the matter for trial on the factual issue of the ambiguity in the agreement only, as well as in the court's resolution of the motion *in limine* in which it concluded that trial should go forward because the bankruptcy discharge injunction did not apply to the agreement. The § 524(a) issue was presented to the superior court and a determination of this ultimate issue was necessary prior to the final resolution of the action in that court: the trial would not have proceeded otherwise, nor would Shandell have prevailed. All the elements of collater-

---

7. Section 524 does not enjoin actions of creditors who have successfully invoked § 523 by receiving a judgment declaring their debts to be nondischargeable. *See Aldrich*, 34 B.R. at 779. In this case, Shandell did not obtain a judgment of nondischargeability, so the debt as a personal liability of Watson was discharged.

8. Furthermore, as a secured interest, Shandell's lien in the accounts "passed through bankruptcy unaffected." *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992). "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). Most courts agree that despite § 524(a), a secured creditor may enforce, after discharge, a valid prepetition lien. *Fernandez–Lopez*, 37 B.R. at 669 (citing *In re Dickinson*, 24 B.R. 547, 550 (Bankr.S.D.Cal.1982)). A secured creditor, like Shandell, has the choice of obtaining relief from the stay to foreclose upon its collateral or, alternatively, waiting until the debtor has been granted a discharge under § 524 and pursue its *in rem* rights against the collateral under state law. *In re Bracamortes*, 166 B.R. 160, 162 (Bankr.S.D.Cal.1994). Either way, Shandell's actions were proper.

al estoppel having been met concerning the discharge issue, and there being no violation of the injunction by the state court action, the bankruptcy court was required to apply this doctrine to bar Watson's allegation that the state court judgment violated the discharge injunction. *See Berr,* 172 B.R. at 306 (once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving the same parties); *see also In re Schneider,* 126 B.R. 626, 629–30 (Bankr.M.D.Fla.1991).

### Res Judicata and Law of the Case As Alternate Grounds for Affirmance.

 While Shandell has not pled Law of the Case or *res judicata,* the panel may consider these legal doctrines based on the fully developed, pertinent factual record before us. *See In re Howell,* 731 F.2d 624, 627 (9th Cir.), *cert. denied,* 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984).

 *Res Judicata* is a doctrine that prevents repetitive litigation of a claim that has previously been tried and decided. *See Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir.1992), and a claim that could have been asserted in the previous litigation. *Id.* Generally, four elements must be present: (1) the parties were identical in the two actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same cause of action was involved in both cases. *Id.,* (citing *Eubanks v. F.D.I.C.,* 977 F.2d 166, 169 (5th Cir.1992)).

The bankruptcy court was free to apply *res judicata* to its own prior order denying Watson's second motion to reopen the bankruptcy case. In retrospect, the bankruptcy court stated that it had denied the motion because it found the agreement to be a postpetition settlement agreement for consideration and not a reaffirmation agreement of a discharged debt. It was also clear from the record that the stay had been lifted as to the state court proceedings. The bankruptcy court did not apply *res judicata,* however, perhaps because it had not held a hearing on the prior motion, nor had it issued findings of

fact and conclusions of law. Rather, the bankruptcy court proceeded to rule again on the merits of the third motion to reopen, and filed its findings and conclusions in regard to that order. Accordingly, the panel will not *sua sponte* apply *res judicata* to preclude Watson's arguments which were heard and decided anew by the bankruptcy court.

 The bankruptcy court's orders may be affirmed, alternatively, under the doctrine of Law of the Case. A court "is precluded from reexamining an issue previously decided by the same court, or a higher appellate court, in the same case." *A & A Concrete, Inc. v. White Mountain Apache Tribe,* 781 F.2d 1411, 1418 (9th Cir.), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986). The issues concerning the nature of the agreement and the applicability of § 524 were previously decided by the bankruptcy court when it denied Watson's second *ex parte* motion to reopen the case and enjoin the state court litigation. Instead, the bankruptcy court allowed the litigation to continue because it believed the agreement was not a reaffirmation of a discharged debt and that the litigation was not prohibited by § 524. Law of the Case called for the denial of Watson's third motion to reopen based on the same arguments, notwithstanding that the state court judgment had subsequently been entered.

### Motion for Reconsideration.

 Motions for reconsideration pursuant to Fed.R.Bankr.P. 9023 have traditionally been treated as motions to alter or amend under Fed.R.Civ.P. 59(e), made applicable by the bankruptcy rule, if the motion draws into question the correctness of the trial court's decision. *In re Weston,* 41 F.3d 493, 495 (9th Cir.1994). The three grounds generally acknowledged for granting a motion for reconsideration are: (1) manifest error of law; (2) manifest error of fact; or (3) newly discovered evidence. *Brown v. Wright,* 588 F.2d 708, 710 (9th Cir.1978); 6A MOORE'S FEDERAL PRACTICE, at 59.07 (2d ed. 1989).

The record shows following Watson's motion for reconsideration, the state court proceedings were concluded and the judgments

entered. He provided copies of the jury's special verdict. The bankruptcy court duly considered all of this evidence in the hearings on the motion. However, the new evidence did not change its legal conclusions. We agree that the bankruptcy court did not abuse its discretion by denying Watson's motion for reconsideration.

## CONCLUSION

After Shandell obtained relief from the automatic stay in bankruptcy court, the creditor was free to pursue the state court action to collect Watson's accounts earned for prepetition services. To avoid litigation expense and possible fines, Watson entered into a postpetition agreement to settle that litigation, releasing any claim or interest in the accounts and agreeing to turn over the monies. Even if Watson could not turn over monies which he allegedly expended, he was not protected by the automatic stay or the discharge injunction from a judgment for all amounts representing those accounts. The judgment was a continuation of the collection efforts which were relieved from the automatic stay provisions, and was the culmination of litigation envisioned in the terms of the agreement which Watson signed with the advice of counsel. The bankruptcy court properly considered the reaffirmation issue where the state court did not make a specific finding under § 524(c). However, Watson was collaterally estopped from relitigating the issue of the § 524(a) discharge injunction in bankruptcy court after the state court had correctly ruled on its inapplicability to the state court proceedings. Moreover, the bankruptcy court's prior ruling denying Watson's previous motion to reopen and for a restraining order was the Law of the Case. Therefore, the bankruptcy court did not abuse its discretion in denying Watson's third motion to reopen the case to enjoin Shandell or to declare the state court judgment void. Furthermore, there were no grounds for granting the motion to reconsider and the bankruptcy court's order denying that motion was proper. Both orders are **AFFIRMED.**