**In re David William BROWN, Debtor.**

**No. 97–16062–LF.**

United States Bankruptcy Court,
C.D. California.

April 14, 1998.

David Brown, San Pedro, CA, for Debtor.

Ms. Diane Spence, Legal Assistant, Bankruptcy Recovery Network, Tustin, CA, for Respondent.

Helen Ryan Frazer, Cerritos, CA, for Chapter 7 Trustee.

Ronald a. Reiter, Attorney General of State of California, Los Angeles, CA, for Daniel E. Lungren.

Mr. Ray McCallen, Los Angeles, CA, for Federal Trade Commission.

## OPINION RE SANCTIONS FOR WILLFUL VIOLATION OF DISCHARGE INJUNCTION

LISA HILL FENNING, Bankruptcy Judge.

This matter came before the Court on an Order to Show Cause issued on September 18, 1997, directing Bankruptcy Recovery Network ("BRN") to appear at a hearing to determine whether BRN willfully and intentionally violated the discharge injunction of 11 U.S.C. § 524. Finding that such a willful and intentional violation has occurred, the Court concludes that sanctions are appropriate.

### Background

The facts are essentially undisputed. Debtor filed a *pro se* Chapter 7 petition in February 1997.[1] His schedules listed a 20-inch gold necklace as an asset of the estate, with a stated value of approximately $760.

---

1. Debtor testified that an attorney assisted him in the preparation of his bankruptcy papers, but he could not remember the attorney's name. No attorney appears of record in the court's files.

The corresponding debt was scheduled as a secured debt, subject to a purchase money security interest held by the jewelry store from which the necklace was purchased. Debtor filed a Statement of Intention pursuant to 11 U.S.C. § 521, indicating his intention to reaffirm this obligation.

At some point the jewelry store assigned its claim to BRN, an entity that specializes in collections based upon assignments of bankruptcy claims and related purchase money security interests. In April 1997, during the pendency of the bankruptcy case, BRN sent a letter to the debtor advising him that BRN was the assignee claiming a purchase money security interest in the necklace. This letter enclosed a reaffirmation agreement for the debtor to sign. (a copy of the letter and reaffirmation agreement are attached as "Exhibit A") Four days later, the debtor sent BRN an unsolicited payment. However, the debtor did not sign or return the reaffirmation agreement. BRN followed up with two more letters on May 13 and 21, 1997, urging him to execute the proposed reaffirmation agreement. He did not respond. On May 28, 1997, the debtor was called by a representative of BRN to urge approval of the reaffirmation agreement. Nevertheless, the debtor did not execute or file the reaffirmation agreement with the court.

On June 4, 1997, the debtor's bankruptcy discharge was entered by the clerk. A month later, BRN sent a letter to the debtor informing him that the lien on the necklace was not discharged, and insisting that it had an immediate right to reclaim the necklace. On August 7, 1997, BRN's representative called the debtor and talked him into an oral agreement, pursuant to which BRN would forbear in its efforts to reclaim the necklace in exchange for debtor's agreement to pay BRN the present value of the necklace in monthly payments of $15.00 each, bearing an interest rate of 12% per year. To document this oral agreement, BRN sent debtor a "Post Discharge Property Retention Agreement," accompanied by a form cover letter referring to the enclosure as a reaffirmation agreement. This agreement was not filed with the Court; indeed, its existence was only brought to the attention of the Court by a member of another judge's staff who was a long-time friend of the debtor's family, and who was puzzled and concerned about its nature and effect.

At the hearing on the Order to Show Cause, debtor stated that he no longer had the necklace, because he had purchased it to give as a gift to someone else, who had since lost it. The Debtor testified that for, at least the past year, his only source of income was welfare payments, except for a few weeks during which he worked part-time at a fast food restaurant. Schedules I and J as filed indicate no current income as of petition date. His testimony revealed substantial confusion about his obligations regarding the necklace.

### Discussion

■ The issue presented by this case is whether a determined purchase money interest holder can bypass the statutory protections of the reaffirmation requirements by calling its agreement for post-discharge installment payments by some other name.

In enacting the Bankruptcy Code, Congress expressed its concern about coerced agreements to repay discharged debt by enacting a detailed, restrictive procedure for reaffirming otherwise dischargeable personal liability on debts. Bankruptcy Code Section 524 provides that:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2) (A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving no-

tice of rescission to the holder of such claim; and

(B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(5) the provisions of subsection (d) of this section have been complied with; and

(6) (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—

(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor.

(B) Subparagraph (A) shall not apply to the extent that such debt is a con-sumer debt secured by real property.

(d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, 1228, or 1328 of this title, the court may hold a hearing at which the debtor shall appear in person. At any hearing, the court shall inform the debtor that discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section and was not represented by an attorney during the course of negotiating such agreement, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall—

(1) inform the debtor—

(A) that such an agreement is not required under this title, under non-bankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c)(6) of this section; and

(B) of the legal effect and consequences of—

(i) an agreement of the kind specified in subsection (c) of this section; and

(ii) a default under such an agreement; and

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

(f) Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt.

BRN does not—and cannot—argue that the agreement qualifies as a timely and appropriate reaffirmation agreement. By the criteria set forth in this section of the Bankruptcy Code, the agreement between the debtor and BRN fails all of the statutory requirements for enforceability of a reaffirmation agreement:

- **It was untimely.** The Code imposes a strict time limit on the filing of reaffirmation agreements: they must be filed before the entry of discharge. The agreement at issue was not filed at all; moreover, it was knowingly negotiated after the debtor's discharge was entered.

- **It was not filed.** Indeed, it came to the Court's attention only through a staff member. BRN attempted to conceal it from the Court.

- **It was not approved by the Court.** Reaffirmation agreements involving *pro se* debtors must be approved by the Court. The terms of this agreement purport to eliminate the need for court approval by calling the agreement by another name.

- **It could not meet the standard for approval of a *pro se* agreement.** The payment obligation would impose a hardship on the unemployed debtor, for no benefit received by the debtor.

- **It does not contain the warnings required by the Code.**

Rather, BRN claims that its agreement does not constitute a reaffirmation agreement at all. Instead, BRN asserts that the agreement embodies the exchange of BRN's decision to forbear on a replevy action against the necklace, in exchange for debtor's promise to make installment payments of $15.00 per month, the same monthly payment as before the bankruptcy. The principal balance to be repaid was $460.15, the amount remaining unpaid on the original contract (according to the Declaration of Diane Spence, BRN's agent). The only change in terms was the reduction in the applicable contractual interest rate from 22.8% to 12% per year.

BRN relies on *In re Watson,* 192 B.R. 739 (9th Cir. BAP 1995), as its principal authority for the proposition that the agreement here does not constitute a reaffirmation agreement. *Watson* involved a dispute over the sale of a business, in which the creditor obtained relief from stay to pursue the state court action and collect prepetition receivables. That litigation was subsequently settled. Upon debtor's breach of the settlement agreement, a second state court action ensued. The debtor thereupon petitioned for the reopening of his bankruptcy case to seek a determination that the second suit constituted an effort to enforce a discharged debt. The Bankruptcy Appellate Panel sustained the lower court's denial of the motion to reopen the case, concluding that because the collection of the accounts and other state court proceedings in the first action were allowed to proceed, notwithstanding the bankruptcy case, the settlement agreement did not constitute a reaffirmation agreement. Nothing about the facts of *Watson* bear upon the factual circumstances before this Court.

More significantly, BRN quoted very selectively from the *Watson* opinion. The full text of the relevant paragraph reads:

"The reaffirmation rules protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. *In re Martin,* 761 F.2d 1163, 1168 (6th Cir.1985). The general rule concerning postpetition contracts versus reaffirmation of discharged debts is that 'the pivotal factor which serves to establish a valid post discharge contract is the existence of some separate consideration for the subsequent agreement.'" *In re Getzoff,* 180 B.R. 572, 575 (9th Cir. BAP 1995)(quoting *In re Heirholzer,* 170 B.R. 938, 940 (Bankr.N.D.Ohio 1994)). Essentially, if a debtor assumes the same obligations under a new agreement as existed under a former, such a discharged debt obligation would preclude a postpetition agreement from being considered a new a separate agreement. *See Getzoff,* 180 B.R. at 574.

Here the obligation is to make installment payments for the prepetition balance due on the necklace, making the same monthly installment payments. Just as would have been true prepetition, if debtor makes the

payments, the secured creditor will not institute state court action to recover the necklace. Only the interest rate has been reduced. Slight reductions in the interest rate do not avoid the conclusion that the new obligations are essentially the same obligations as existed previously. Under the terms of the BRN obligation, the debtor is personally liable for the payments promised, and is subject to all enforcement methods available under state law.

In this case, moreover, the supposed additional consideration for the post-discharge agreement—forbearing on reclamation—fails as a matter of law to constitute adequate consideration, as debtor was no longer in possession of the goods in question. Even if the debtor had retained the item, however, forbearing on a remedy that BRN has shown no evidence of ever using for such a small item cannot constitute the kind of valuable consideration that must exist to justify exception to the discharge injunction.

Indeed, many, if not most, of the reaffirmation agreements heard by this Court involve reductions of principal amount and interest rate. Such modifications are often crucial incentives to debtors, inducing them to reaffirm obligations. BRN's spurious distinctions reflects its concerted, serious evasion of the letter and spirit of Section 524. The declarations submitted in response to the Order to Show Cause establish unequivocally that the kind of agreement at issue here is a routine business practice of BRN. In other words, BRN's general business policy is routinely to violate the discharge injunction by soliciting post-discharge agreements that impose personal liability on debtors for prepetition discharged obligations. For that reason, this written opinion is warranted.

**CONCLUSION**

Section 524 of the Bankruptcy Code prohibits creditors from attempting to enforce prepetition obligations in violation of the discharge injunction. Only if court approval has been obtained in a timely manner can a post-petition agreement to repay a prepetition debt be enforced against an unrepresented debtor. Unfortunately, unrepresented debtors do not know that the kind of post-discharge agreement imposed upon the debt-

or here after *repeated* post-petition collection efforts is unenforceable as a matter of law. BRN is thus engaged in a highly unethical, statutorily prohibited routine business practice of soliciting illegal agreements and impinging upon the fresh start to which debtors are entitled. This agreement is therefore void and unenforceable against debtor.

■ Debtor has not, however, sustained any losses other than the one $15.00 payment made post-petition. Therefore, sanctions of $200.00 shall be imposed jointly and severally upon BRN and its attorneys payable to debtor within 30 days of notice of entry of the order on this matter. This matter will also be referred to the appropriate authorities for investigation of BRN's debt collection practices.

A separate order will be entered accordingly.

This matter came before the Court on an Order to Show Cause re Violation of Discharge Injunction. Respondent appeared and offered evidence and argument. Finding no good cause has been shown for Respondent's conduct, and good cause appearing for imposition of sanctions.

### ORDER IMPOSING SANCTIONS RE ORDER TO SHOW CAUSE

IT IS HEREBY ORDERED that:

1. The post-discharge agreement between Bankruptcy Recovery Network and the debtor is void and unenforceable.

2. Sanctions of $200.00 are imposed jointly and severally upon Bankruptcy Recovery Network and its attorneys, and must be paid to debtor within 30 days of the notice of entry of this order.

**EXHIBIT "A"**

BANKRUPTCY RECOVERY NETWORK
P.O. BOX 3788
TUSTIN, CA 92781
(800) BRN–3788
(714) 573–2846

August 8, 1997

DAVID BROWN
2216 BARRYWOOD AVE
SAN PEDRO CA 90731

RE: BK Case No. LA9716062LF
HATFIELD JEWELERS

Enclosed please find *the Reaffirmation Agreement* that we have accepted on behalf of the above-named Creditor. Please complete and sign the Agreement, and return it to our office within 7 days, along with your initial payment, if due. Please be sure to complete the "Declaration" section of the Agreement, listing the items of property you wish to retain, and sign it again at the bottom, stating that these items were in your possession at the time you filed your bankruptcy petition.

Please contact us at the number listed above, if you have any further questions. Thank you for your cooperation.

Sincerely,

/s/ Diane Spence

Diane Spence
Legal Assistant

### POST DISCHARGE PROPERTY RETENTION AGREEMENT

This Agreement is made between the parties named below, hereinafter "Promisor(s)", and Bankruptcy Recovery Network, hereinafter "BRN", assignee of account number 8293884927 and its related claims, previously owned by BARRY'S JEWELERS, INC. In consideration of the mutual promises contained herein, the parties agree as follows:

1. In consideration of retaining possession of the "Secured Property" purchased from HATFIELD JEWELERS described as: FINE JEWELRY, Promisor(s) agree(s) to pay BRN the sum of $460.15, the principal balance due, plus interest at an annual rate of 12.00%, payable as follows: $0.00 FORTHWITH, THEN $15.00 EACH MONTH BEGINNING 09/20/97 UNTIL PAID IN FULL. Promisor(s) agree(s) that the Secured Property has a "Market Value" of $460.15.

2. In consideration of the execution of this Agreement, BRN agrees to refrain from legal action, including the filing of a lawsuit for recovery of possession of the Secured Property described herein.

3. BRN hereby acknowledges that Promisor(s) have received a Discharge from the U.S. Bankruptcy Court and Promisor(s) acknowledge the fact that BARRY'S JEWELERS INC, and its assignee, BRN, have the right to pursue and recover the Secured Property for this discharged debt under 11 U.S.C. Section 524 and applicable state law.

4. Promisor(s) shall retain possession of the Secured Property, provided that Promisor(s) agree(s) to surrender possession of the Secured Property to BRN upon failure of Promisor(s) to make each payment when due, or otherwise failing to comply with any term of this Agreement.

5. In the event that Promisor(s) are unable or unwilling to surrender the Secured Property, the parties agree that the "Present Value" of the Secured Property shall always be equal to the lesser of the Market Value defined hereinabove and the amount due BRN under this Agreement.

6. Promisor(s) agree that BRN retains a lien on the Secured Property and Agreement. This Agreement is enforceable under the laws of the State of California and venue is proper in the Courts of the State of California.

7. Upon completion of the agreed upon payment terms, BRN will transfer all title and right to possession of the Secured Property to Promisor(s).

8. Promisor(s) understand(s) that *this is not a Reaffirmation Agreement*, and therefore, is not subject to the requirements of 11 U.S.C. Section 524(c), and may not be rescinded by either party after acceptance.

9. If Promisor(s) fail to keep their promises as set forth herein, Promisor(s) agree(s) that BRN shall retain all payments made prior to breach and that, should legal action become necessary to enforce this Agreement, the prevailing party shall be entitled to recovery its court costs and reasonable attorney fees.

108

10. Should any term of this Agreement be deemed unenforceable, the remaining terms of the Agreement shall remain in full force and effect.

Executed for BRN at Tustin, CA_____Date_____

_____Date_____     _____Date_____
Promisor,                                     Promisor, DAVID BROWN

MAIL PAYMENTS TO:
BANKRUPTCY RECOVERY NETWORK    _____
P.O. BOX 3788
TUSTIN, CA 92781                   Street Address, City, State, Zip
\* \* \* BRN Copyright 1996 \* \* \*